[Cite as *In re P.C.*, 2021-Ohio-1238.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

IN RE:

    P.C.,

[DANIEL C. - APPELLANT]

CASE NO. 8-20-39

O P I N I O N

IN RE:

    A.C.,

[DANIEL C. - APPELLANT]

CASE NO. 8-20-40

O P I N I O N

IN RE:

    C.C.,

[DANIEL C. - APPELLANT]

CASE NO. 8-20-41

O P I N I O N

IN RE:

    P.C.,

[DANIEL C. - APPELLANT]

CASE NO. 8-20-45

O P I N I O N

IN RE:

    A.C.,

[DANIEL C. - APPELLANT]

CASE NO. 8-20-46

O P I N I O N

Case No. 8-20-39, 40, 41, 45, 46 and 47

IN RE:

    C.C.,

[DANIEL C. - APPELLANT]

**CASE NO. 8-20-47**

**O P I N I O N**

**Appeals from Logan County Common Pleas Court
Juvenile Division
Trial Court Nos. 18 CS 0037 A, B, C, D, E, F**

**Judgments Affirmed**

**Date of Decision:   April 12, 2021**

APPEARANCES:

    *Alison Boggs* **for Appellant, Father**

    *Stacia L. Rapp* **for Appellee, Logan County Children's Services**

    *Linda MacGillivray,* **Guardian Ad Litem**

**SHAW, J.**

{¶1} Father-appellant, Daniel C. ("Daniel"), brings these appeals from the August 10, 2020, judgments of the Logan County Common Pleas Court, Juvenile Division, adjudicating his children P.C., A.C., and C.C. dependent, placing them in the temporary custody of Paternal Grandparents, granting Daniel supervised parenting time subject to the approval of Logan County Children's Services (the

"Agency"), and placing the children under the protective supervision of the Agency. Daniel also appeals the trial court's August 18, 2020, judgments granting the request of the children's mothers to immunize the children.

*Background*

**{¶2}** On August 6, 2018, the Agency filed complaints and a motion for temporary orders alleging that P.C. (born in 2007), A.C. (born in 2010), and C.C. (born in 2013), were dependent children pursuant to R.C. 2151.04(C). According to the complaints, all three children were residing with their father, Daniel, at the time. The record establishes that Danielle F. is the mother of P.C. and A.C., and Amy C. is the mother of C.C.; however, Daniel was married to a woman named Jonna C. at the time the complaint was filed.

**{¶3}** As the basis for the complaints, the Agency alleged that it had received "multiple referrals" regarding concerns for the well-being of the children coming from numerous referral sources and that the reports spanned multiple months. (Doc. No. 1 at 2).[1] The complaints contained numerous allegations, beginning with a claim that in February of 2018, Daniel had left the three younger children in the care of their older sibling D.C., who was also a minor at the time, for eight to ten days while Daniel and his wife travelled out of state.[2] D.C. purportedly did not have

---

[1] For ease of discussion, when making reference to the record we will use the docketing numbers assigned to Case No. 18-CS-037B, Appellate Nos. 8-20-39 and 8-20-45.

[2] At the time the complaints were filed, there was also a dependency case opened regarding the children's older sibling D.C. (born in 2001), who has since been emancipated and is not part of these appeals.

access to a car or a phone. The Agency also alleged that it received reports of filthy living conditions in Daniel's home; that Daniel permitted the children to consume alcoholic beverages; that Daniel smoked marijuana in front of the children; that the children had inadequate food and clothing; and that P.C. and A.C. had a significant amount of absences from school due to Daniel's failure to treat a chronic lice problem that had been an ongoing issue for the prior three years.

{¶4} The complaints further alleged that D.C., with whom the children were left during the vacation, was " 'very slow' cognitively and was 'always in trouble with the courts for thieving and getting into trouble;' " that Daniel was suspected of selling marijuana and using it with D.C.; and that Daniel and his wife Jonna, who was not the mother of any of the children, constantly fought in front of the children creating an unstable environment. (Doc. No. 1). The Agency claimed that when it tried to investigate the allegations in these referrals, Daniel refused to cooperate and told the caseworkers to return with a court order.

{¶5} The Agency explained that it had been involved in three prior cases with Daniel since 2011 and that in each of those cases Daniel was uncooperative and had a history of refusing to comply with the drug screening in the case plans. These prior cases involved concerns of improper supervision in Daniel's home with C.C. found wandering outside, concerns with Daniel's drug use, an incident in which A.C. was alleged to have struck C.C. causing him to have a nose bleed, concerns

with P.C. and A.C. not completing their school work, and ongoing issues with the children having lice and bed bug bites. In August of 2017, Daniel eventually completed the case plan objectives and the cases were closed. However, the Agency stated that based upon the most recent referrals its involvement with the family was warranted again.

{¶6} In the ensuing months after the complaint was filed the Agency filed a motion for emergency temporary custody of the children alleging, *inter alia*, that Daniel and D.C. had been smoking marijuana together, that both D.C. and Daniel disciplined the younger children by spanking them and leaving red marks, that the children would often go to bed hungry because they were not fed, that the children still dealt with lice and fleas, that the electricity had been shut off at their home for a period of time in September of 2018, and that Daniel did not believe in doctors so the children had not seen a doctor.

{¶7} Following a hearing the trial court issued an entry finding probable cause to remove the children from Daniel's home. The children were placed in the temporary care of paternal grandfather and paternal step-grandmother.

{¶8} On October 25 and 30, 2018, the trial court conducted an adjudication and disposition hearing on the Agency's dependency complaints. Prior to taking testimony, the trial court conducted *in camera* interviews of the children. Upon commencement of the hearing, several witness testified for the Agency including

ongoing Agency caseworkers, the mother of P.C. and A.C. (Danielle F.), the girl scout leader for P.C. and A.C.,[3] and paternal step-grandmother (temporary legal custodian). Daniel presented testimony of numerous witnesses in support of his case including that of his mother, his then-wife, and family acquaintances. Daniel also testified at the hearing.

{¶9} On December 18, 2018, the trial court issued a judgment entry finding clear and convincing evidence to adjudicate the children dependent under R.C. 2151.04(C). However, the entry did not contain findings of fact and conclusions of law. Nevertheless, the trial court ordered the Agency to continue its protective supervision of the children and placed the children in the temporary custody of paternal grandfather and paternal step-grandmother. Daniel was granted supervised visitation with the children subject to the Agency's approval.

{¶10} On June 27, 2019, Danielle F. filed a Motion for Vaccination of P.C. and A.C., and she requested a hearing on the matter. In response, Daniel filed a motion opposing the immunization of P.C. and A.C.

{¶11} On August 22, 2019, the trial court held a hearing on the Motion for Vaccination. At the hearing, the trial court also considered a request to vaccinate C.C.[4] Daniel testified regarding his beliefs against vaccinating his children. He

---

[3] This scout leader was also Danielle's cousin.

[4] Although not explicitly clear from the record, it appears that Amy C. also sought to have C.C. vaccinated. (Aug. 22, 2019 Hrg. Tr. at 72). It is important to note that the record demonstrates that the Agency specifically stated that it took no position on the vaccination issue. (*Id*. at 62-63).

explained that he specifically objected to certain ingredients in some vaccines, such as mercury and aluminum. He also expressed concerns about possible side effects of vaccines, such as allergic reactions and death. However, he acknowledged that some of his children had received vaccinations, and that his views had changed on the matter as he aged. He was against vaccination at the time of the hearing, or at the very least he was against forcing the children to receive vaccinations before they could make the decision for themselves.

{¶12} On September 20, 2019, the trial court issued judgment entries on Danielle F.'s motion to vaccinate P.C. and A.C., and Amy C.'s request to vaccinate C.C. Specifically, the trial court granted the motion to vaccinate and ordered the children to be immunized.

{¶13} Daniel then filed an appeal to this Court, challenging the trial court's dependency findings and the trial court's determination on the vaccination issue. *See In re P.C., A.C., C.C., P.C., A.C., C.C.*, 3d Dist. Logan Nos. 8-19-45, 46, 47, 8-19-54, 55, 56, 2020-Ohio-2889. Although the trial court made its dependency determination regarding the children at the conclusion of the October 30, 2020, hearing, and the trial court filed a judgment entry on the matter on December 18, 2018, the record did not indicate that Daniel was ever properly served pursuant to Civ.R. 58(B). Because of the lack of service, this Court determined under App.R. 4(A), "the time for filing a notice of appeal never began to run because of the failure

to comply with Civ.R. 58(B)." *In re P.C.* at ¶ 17. Therefore we determined that Daniel could challenge both the dependency findings and the vaccination issue on appeal. *Id.*

**{¶14}** Proceeding to Daniel's assignments of error in his initial appeal, we held that the trial court failed to comply with R.C. 2151.28(L) in its judgment entry finding the children dependent because the entry was "devoid of any findings of fact and conclusions of law." *Id*. at ¶ 24. We determined that the entry did not make any " 'specific findings as to the existence of any danger to the child and any underlying family problems that are the basis for the court's determination that the child is a dependent child." *In re P.C.*, 3d Dist. Logan No. 8-19-45, 2020-Ohio-2889, ¶ 24, citing R.C. 2151.28(L). Therefore the prior judgments finding the children dependent were vacated and the cases were remanded to the trial court to make findings of fact and conclusions of law in compliance with R.C. 2151.28(L). Since the cases were being remanded to the trial court, we found the vaccination issue moot because it would have to be revisited after proper judgment entries of adjudication and disposition were filed in compliance with statutory rules. *Id*. at ¶ 28.

**{¶15}** Following remand, the trial court issued a new judgment entry on August 10, 2020, finding the children dependent by clear and convincing evidence

and reiterating the previously stated disposition. The new judgment entry contained extensive findings of fact and conclusions of law.

{¶16} On August 18, 2020, the trial court filed a judgment entry regarding the immunization issue, ordering the vaccination of the children pursuant to the mothers' requests. The entry also contained multiple pages of findings of fact and conclusions of law.

{¶17} Daniel now brings the instant appeals, challenging the dependency findings of the children in the August 10, 2020, entry, and the trial court's August 18, 2020, vaccination order. He asserts the following assignments of error for our review.

**ASSIGNMENT OF ERROR NO. 1**
**THE TRIAL COURT'S DECISION IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE. APPELLEE DID NOT PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE CHILDREN WERE DEPENDENT.**

**ASSIGNMENT OF ERROR NO. 2**
**THE TRIAL COURT ERRED WHEN IT CONDUCTED THE DISPOSITIONAL HEARING AND ORDERED CASE PLANS INTO EFFECT WHEN APPELLEE DID NOT PRESENT ANY EVIDENCE REGARDING THE CONTENT OF THE CASE PLANS, THUS PREVENTING THE COURT FROM DETERMINING WHETHER THE REQUIREMENTS OF THE CASE PLANS WERE IN THE BEST INTEREST OF THE MINOR CHILDREN.**

**ASSIGNMENT OF ERROR NO. 3**
**THE TRIAL COURT ERRED IN FINDING APPELLEE USED REASONABLE EFFORTS TO PREVENT THE REMOVAL OF**

**THE CHILDREN, TO ELIMINATE THE CONTINUED REMOVAL OF THE CHILDREN OR TO MAKE IT POSSIBLE FOR THE CHILDREN TO RETURN HOME SAFELY AT BOTH THE ADJUDICATION AND THE DISPOSITIONAL HEARING.**

**ASSIGNMENT OF ERROR NO. 4**
**THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S OBJECTION TO THE ADMISSION OF EVIDENCE OF WITNESSES' PRIOR CONVICTIONS THAT WERE OLDER THAN TEN YEARS.**

**ASSIGNMENT OF ERROR NO. 5**
**THE GUARDIAN AD LITEM FAILED TO PERFORM NECESSARY DUTIES PURSUANT TO OHIO REVISED CODE SECTION 2151.281 AND SUPERINTENDEN[CE] RULE 48, TO APPELLANT'S DETRIMENT AND IN VIOLATION OF HIS DUE PROCESS.**

**ASSIGNMENT OF ERROR NO. 6**
**THE TRIAL COURT ERRED WHEN IT ALLOWED, ON MULTIPLE OCCASIONS, IMPERMISSIBLE HEARSAY DURING THE ADJUDICATORY HEARING.**

**ASSIGNMENT OF ERROR NO. 7**
**APPELLANT WAS DENIED A FAIR ADJUDICATORY HEARING AS A RESULT OF THE CUMULATIVE ERRORS THAT OCCURRED THROUGHOUT THE HEARING.**

**ASSIGNMENT OF ERROR NO. 8**
**THE JUDGE ERRED WHEN IT ORDERED THE CHILDREN TO BE IMMUNIZED AGAINST APPELLANT'S WISHES.**

{¶18} For ease of discussion, we elect to address some of the assignments of error out of the order in which they were raised.

*First Assignment of Error*

**{¶19}** In his first assignment of error, Daniel argues that the trial court's determinations that the children were dependent were not supported by sufficient evidence and that they were against the manifest weight of the evidence.

Standard of Review

**{¶20}** A trial court's determination that a child is dependent under R.C. 2151.04 must be supported by clear and convincing evidence. *In re L.H.*, 3d Dist. Defiance No. 4-19-14, 2020-Ohio-718, ¶ 30, *appeal not allowed*, 159 Ohio St.3d 1418, 2020-Ohio-3365, citing *In re S.L.*, 3d Dist. Union Nos. 14-15-07, 14-15-08, 2016-Ohio-5000, ¶ 11, citing *In re B.B.*, 3d Dist. Defiance No. 4-10-17, 2012-Ohio-2695, ¶ 32, citing R.C. 2151.35. "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954). "[W]hen 'the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof.' " *In re Freed Children*, 3d Dist. Hancock No. 5-08-37, 2009-Ohio-996, ¶ 26, quoting *Cross* at 477. Therefore, we are required to determine whether the trial court's determination is supported by sufficient evidence to satisfy the clear-and convincing-evidence degree of proof. *In re S.L.*, *supra*, at ¶11,

citing *In re B.B.* at ¶ 33, citing *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985).

{**¶21**} "[S]ufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a [judgment] is a question of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

Controlling Statute

{**¶22**} Ohio Revised Code 2151.04(C) defines a dependent child as one, "Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship."

Trial Court's Findings Based on the Evidence Presented
at the Adjudication Hearing

{**¶23**} Following remand on this matter, the trial court issued a thorough judgment entry explaining its reasoning as to why it determined the children were

dependent pursuant to R.C. 2151.04(C). The trial court divided its entry into subsections, beginning with findings of fact on "Concerns for Supervision." In this subsection, the trial court highlighted testimony from Danielle F. who stated that in February of 2018 she went to Daniel's home to pick up her daughters, P.C. and A.C. Danielle testified that there were no adults in the home at that time, that the house was a mess, that there were no clothes in the children's dressers, and no ready-to-eat foods. Danielle indicated that D.C. was left in charge of the children while his parents were away on vacation, even though D.C. had no access to a phone or a vehicle. The trial court noted that D.C.'s probation officer testified that throughout the year of 2018, D.C. regularly tested positive for marijuana, and once for cocaine as well. Danielle did not believe D.C. would be an appropriate babysitter for the younger children. The trial court agreed, finding concerns about D.C.'s maturity level; however, the trial court stated that even if D.C. was an appropriate supervisor, it was a threat to the well-being of the children to be left with a sibling with no access to a phone or vehicle.

{¶24} The trial court then listed its concerns for "Basic Care and Needs of the Minor Children." These concerns included Danielle's testimony about an incident in August of 2018 wherein Daniel used marijuana while children were in another room of the home, Danielle's testimony that on multiple occasions she found Daniel's home in such disarray that she had to clean it for Daniel, and

Danielle's testimony that Daniel yelled at the children, threw items at them, and used explicit, inappropriate language toward the children. A recording of Daniel yelling at the youngest children using vulgar language was played for the trial court.

{¶25} The trial court also found concerns with the care and needs of the children through the testimony of Daphne S., who was the girl scout leader for P.C. and A.C. Daphne testified that in July of 2018 she was in Daniel's home and it was very cluttered and dirty. Daphne testified that when she received the girls from Daniel they were always hungry, much more so than average girls in the girl scout troop, and that other scout leaders brought food for the girls to eat because of this. Further, Daphne stated she had P.C. and A.C. overnight on occasion and they would always be dirty and needing a bath. There was also an incident wherein Daphne had the children overnight, with Daniel's permission, but Daniel did not remember that she had the children the next day.

{¶26} Further, in concerns for the basic needs of the children, the trial court noted the testimony of Daniel's wife, Jonna, who stated that when she left the house because she was fighting with Daniel, she called and had the electricity shut off even knowing that the minor children were living there in order to punish Daniel. Due to Daniel's financial state, it took him two days to restore the electricity, and then only after help from a relative. The trial court found Daniel's financial state

concerning since he testified he was the sole source of income and Jonna provided care for the children.

{¶27} The trial court's entry next addressed "Concerns for the Medical Care of the Minor Children." The trial court emphasized testimony that indicated that the children repeatedly had lice, so much so that when they went to be cared for at other houses they had a regular routine to be treated for lice. Nevertheless, the children would return from Daniel's house the next time still having lice. The children had missed numerous days of school because of the lice issue. Witnesses testified that Daniel was informed of the lice issue but he did not adequately address it to remedy the problem that had become chronic. The trial court found that Daniel made *some* efforts towards removing the lice but his efforts were insufficient, leading to the chronic issues with the children.

{¶28} In addition, the trial court noted that testimony indicated A.C. had a urinary tract infection for months, dating as far back as September of 2017, which Daniel did not address despite A.C. having burning and frequent urination. Testimony indicated that Daniel merely urged A.C. to shower to resolve the problem.

{¶29} Further, C.C. also had unaddressed health issues according to the testimony. For example, C.C. was covered with bug bites after being at Daniel's residence but was not taken to the doctor by Daniel, C.C. was not treated for an

extremely high fever, and C.C. did not even know how to brush his own teeth. Daniel generally did not take the children to the doctor, believing he could resolve the issues through his own research. The trial court emphasized that during its *in camera* interview with C.C., the child had numerous bites that the trial court believed C.C. had obtained prior to his removal from Daniel's home. The trial court specifically stated that the bite marks were "appalling."

{¶30} Finally, the trial court addressed "Concerns for the Education of the Minor Children" in its entry. The trial court emphasized the testimony of Mary C., the children's temporary custodian, who found that C.C. was behind in his development because he could not identify his letters or numbers and he could not write. The trial court noted that during its *in camera* interview with C.C. it felt that C.C. should have been in Kindergarten. "At the very least, [Daniel] should have made the decision to keep him out of school for another year with trained educational professionals, not on his own as he did." The trial court also emphasized that Daniel did not know the names of his children's teachers.

{¶31} The trial court was troubled by the fact that Jonna stated she was the primary caregiver for the children, yet she also testified that she would leave the home for several days at a time when she fought with Daniel. In fact, she testified that she had left the home as many as seven times in the prior year for two-to-three days each time—the last incidence of which Jonna turned off the electricity.

{¶32} Based on all of the factual findings and the concerns listed in the entry, the trial court found by clear and convincing evidence that Daniel failed to provide adequate care and supervision for the children, creating an environment for the children such that intervention by the Agency was warranted.

Analysis

{¶33} On appeal, Daniel argues that the trial court's entry ignored contrary evidence presented by Daniel's witnesses, and ignored some evidence favorable to Daniel presented by the Agency's witnesses. For example, Daniel claims that the trial court ignored testimony from Daphne, whom the trial court found credible, that she had been at Daniel's home when the house was clean and there was food present. Further, Daphne testified that when she went to the home during Daniel's purported vacation with Jonna, there was an adult female there, contrary to Danielle's testimony.

{¶34} Daniel also argues that dirty clothes and dishes in a residence did not make the children living there dependent, particularly since those items established that the children did have some clothing and presumably food since dishes were dirty. Additionally, Daniel claims on appeal that the witnesses presented by the Agency had a "clear bias." Thus he maintains that the Agency did not meet its burden by clear and convincing evidence.

{¶35} As to Daniel's claims regarding the trial court's findings, many, if not all, of these determinations rest on credibility judgments, which we will not second-guess on appeal. *Logan v. Holcomb*, 3d Dist. Marion No. 9-12-61, 2013-Ohio-2047, ¶ 39; *State v. DeHass*, 10 Ohio St.2d 230 (1967). This is particularly true given that this case involves children. *In re E.B.*, 8th Dist. Cuyahoga Nos. 109093, 109094, 2020-Ohio-4139, ¶ 47. Furthermore, it is of paramount importance to note the trial court interviewed the children *in camera*, and was thus able to see and evaluate them before hearing the testimony regarding their condition and environment.

{¶36} Moreover, a key factor that Daniel attempts to minimize in his appeal are the ongoing struggles with health issues, particularly the lice issue with the children. The children's lice issue was not a single isolated incidence, or even a second incidence, but rather an ongoing struggle wherein the children had to be treated whenever they went to their temporary caregiver's home after being at Daniel's residence. There was testimony that the children had missed numerous days of school and that the lice problem was chronic. The trial court found that Daniel's attempts to address the issue were woefully insufficient.

{¶37} In addition, there were other ongoing health problems with the children that Daniel failed to address such as A.C.'s ongoing urinary tract infection and C.C.'s bug bites—bites the trial court described after seeing them as appalling. Daniel believed in avoiding doctors to the extent that he could, and the choice to

consult Google rather than see a doctor or treat his children *fully* led to conditions of ongoing suffering for the children.

{¶38} Moreover, although in his brief Daniel attempts to minimize the power being shut off in the house by Jonna as a unilateral decision by her, the trial court was troubled by this incident because Jonna was supposed to be the children's primary caregiver. In addition, by her own testimony, Jonna left the house for multiple days at a time when she and Daniel got into fights. Thus regardless of the true state of cleanliness in the house and the amount of food inside, which testimony conflicted upon, there was clear testimony related to health issues of the children and testimony related to a poor general environment for their care. Given the trial court's credibility determinations, we cannot find that the trial court erred.

{¶39} Finally, Daniel also argues that the trial court improperly relied on Daniel's marijuana use in the home as rendering the children dependent without evidence that the substance was impairing his ability to supervise the children. In support he cites this Court's decision *In re K.J.*, 3d Dist. Hancock Nos. 5-19-31, 5-19-32, 2020-Ohio-3918, wherein we determined that drug use by a parent outside of the presence of children *alone* is not sufficient to support a dependency finding. However, *K.J.*, is readily distinguishable from the case *sub judice* as the use of marijuana, or other drugs, is not the sole basis for the dependency findings here, thus we do not find *K.J.*'s holding applicable in this instance.

{¶40} On the record before us, we cannot find that the trial court erred by determining that the children were dependent by clear and convincing evidence. The trial court's determinations were supported by sufficient evidence, and even given the conflicting testimony of Daniel and his witnesses, the trial court's determinations were not against the manifest weight of the evidence where the trial court was able to see and hear the testimony of the witnesses. Therefore Daniel's first assignment of error is overruled.

*Third Assignment of Error*

{¶41} In his third assignment of error, Daniel argues that the trial court erred by finding that the Agency engaged in reasonable efforts to prevent the removal of the children from his home and to eliminate the continued removal of children.

Standard of Review

{¶42} Revised Code 2151.419 imposes a duty on the part of children services agencies to make reasonable efforts " 'to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home.' " *In re B.P.,* 3d Dist. Logan No. 8–15–07, 2015–Ohio–5445, ¶ 39, quoting R.C. 2151.419(A)(1). "[T]he agency bears the burden of showing that it made reasonable efforts." *In re T.S.,* 3d Dist. Mercer Nos. 10–14–13, 10–14–14, and 10–14–15, 2015–Ohio–1184, ¶ 26, citing R.C. 2151.419(A)(1). "We review under an abuse-of-discretion standard a

trial court's finding that an agency made reasonable efforts toward reunification." *In re A.M.,* 3d Dist. Marion No. 9–14–46, 2015–Ohio–2740, ¶ 24, citing *In re C.F.,* 113 Ohio St.3d 73, 2007–Ohio–1104, ¶ 48 and *In re Sherman,* 3d Dist. Hancock Nos. 5–06–21, 5–06–22, and 5–06–23, 2006–Ohio–6485, ¶ 11. An abuse of discretion suggests that the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

Analysis

**{¶43}** Daniel claims on appeal that the Agency did not present any testimony related to making reasonable efforts. Rather, Daniel claims that a caseworker from the Agency simply testified that the Agency had tried to engage with Daniel and provide him with services but the Agency had been unsuccessful, and that safety concerns for the children had not been alleviated. Daniel argues that this testimony was not specific enough to establish reasonable efforts by the Agency here.

**{¶44}** Contrary to Daniel's argument, the record indicates that Daniel would not comply with Agency services that were offered to him. Further, since the complaint had been filed, new concerns had been raised with the Agency about Daniel's home and his actions, some based on recurring issues and some based on entirely new issues such as the power in the house being shut off.

**{¶45}** In addition, there were a number of issues listed in the case plan to be resolved that had not been ameliorated such as cooperating with caseworkers,

accepting and acting on referrals, ensuring that the children were attending school regularly, ensuring the children were being supervised appropriately, and ensuring that Daniel and Jonna were providing for the children's basic needs including food, shelter, clothing, and health care.

{¶46} As Courts have held before, the issue in determining "reasonable efforts" is not whether there was anything more that the agency could have done, but whether the Agency's case planning and efforts were reasonable and diligent under the circumstances of this case. *In re C.C., I.C.,* 3d Dist. Marion Nos. 9-16-07, 9-16-08, 2016-Ohio-6981, ¶ 16. Given the highly deferential standard of review in this matter, we cannot find that the trial court abused its discretion in finding that reasonable efforts had been made by the Agency as demonstrated through the case plan filed in the record and the statements of the Agency. Therefore Daniel's third assignment of error is overruled.

*Fifth Assignment of Error*

{¶47} In his fifth assignment of error, Daniel argues that the GAL failed to perform necessary duties pursuant to R.C. 2151.281 and Superintendence Rule 48. Daniel claims the record does not show what the GAL actually did as part of her investigation.

Standard of Review

**{¶48}** There is no indication in the record that Daniel objected to the actions or performance of the GAL. As a result, Daniel has failed to preserve this error for appeal. "It is well established that if a party fails to object at the trial court level, that party waives all but plain error." *In re L.L.*, 3d Dist. Logan Nos. 8–14–25, 8–14–26, 8–14–27, 2015–Ohio–2739, ¶ 51, quoting *In re M.R.*, 3d Dist. Defiance No. 4–12–18, 2013–Ohio–1302, ¶ 84.

**{¶49}** In *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 1997–Ohio–401, addressing the applicability of the plain error doctrine to appeals of civil cases, the Supreme Court of Ohio stated:

> **In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.**

Analysis

**{¶50}** Daniel does not specifically make a plain error argument in his brief to this Court in his appeal. We have specifically rejected and overruled identical assignments of error for this *single failure alone*. *In re S.L.*, 3d Dist. Logan No. 8-17-25, 2018-Ohio-1111, ¶ 47.

{¶51} Notwithstanding this point, there is no validity to Daniel's argument that the GAL failed in her duties in this case. Revised Code 2151.281(I) governs a GAL's duties, and it reads as follows.

> **(I) The guardian ad litem for an alleged or adjudicated abused, neglected, or dependent child shall perform whatever functions are necessary to protect the best interest of the child, including, but not limited to, investigation, mediation, monitoring court proceedings, and monitoring the services provided the child by the public children services agency or private child placing agency that has temporary or permanent custody of the child, and shall file any motions and other court papers that are in the best interest of the child in accordance with rules adopted by the supreme court.**
>
> **The guardian ad litem shall be given notice of all hearings, administrative reviews, and other proceedings in the same manner as notice is given to parties to the action.**

{¶52} In addition to Revised Code 2151.281(I), Superintendence Rule 48(D) provides *guidance* regarding a GAL's duties. Superintendence Rule 48 states that a GAL should perform at minimum a certain number of duties.[5] Some of the duties include: representing the best interest of the child, maintaining objectivity, participating in hearings, keeping accurate records, and making reasonable efforts to become informed about the case. However, it is important to emphasize that Sup.R. 48 *does not create substantive rights*, even if a GAL fails to comply with the rule. *In re: W.H., H.W., J.W. III, J.W., P.W., E.W., J.W. IV*, 3d Dist. Marion No. 9-

---

[5] The Superintendence Rules have been updated effective January 1, 2021.

16-19, 2016-Ohio-8206, ¶ 77, citing *In re E. W.,* 4th Dist. Washington Nos. 10CA18, 10CA19, 10CA20, 2011–Ohio–2123, ¶ 12; *accord In re J.A. W.,* 11th Dist. Trumbull No.2013–T–0009, 2013–Ohio–2614, ¶ 47; *In re K. V.,* 6th Dist. Lucas No. L–11–1087, 2012–Ohio–190, ¶ 30 (stating that the Rules of Superintendence do not give rise to substantive rights, and so the filing of a GAL's report is not mandatory.). " 'They are not the equivalent of rules of procedure and have no force equivalent to a statute. They are purely internal housekeeping rules which are of concern to the judges of the several courts but create no rights in individual defendants.' " *Allen v. Allen,* 11th Dist. Trumbull No.2009–T–0070, 2010–Ohio–475, ¶ 31, quoting *State v. Gettys,* 49 Ohio App.2d 241, 243, 360 N.E.2d 735, (3d. Dist.1976). Therefore, a GAL's failure to comply with his or her duties under Sup.R. 48 is not basis for reversal unless a parent demonstrates prejudice. *In re J.P.*, 10th Dist. Franklin No. 18AP-834, 2019-Ohio-1619, ¶ 45, citing *In re K.R.*, 12th Dist. Warren Nos. CA2017-02-015, CA2017-02-019, CA2017-02, 024, 2017-Ohio-7122, ¶ 22; *In re W.H.*, 3d Dist. Marion No. 9-16-19, 2016-Ohio-8206, ¶ 79; *In re J.C.*, 4th Dist. Adams No. 07CA833, 2007-Ohio-3781, ¶ 13.

**{¶53}** In this case, the record reflects that the GAL regularly attended hearings. She questioned witnesses at the adjudication hearing and made a statement in closing arguments at the adjudication hearing that detailed some of her

involvement in this case with the parties and the children. During the dispositional phase, the GAL further clarified her involvement in this case and presented exhibits showing that she had been in correspondence with the children's schools and their teachers. She was also part of the *in camera* interviews of the children. Further, she was in contact with individuals who believed they had heard Daniel threatening the oldest child and the babysitter. She stated that she attempted to visit with Daniel, but he declined.

{¶54} Moreover, at the dispositional hearing the GAL noted she did not file a report prior to the dispositional phase because of the "strange timing of this dispositional hearing." (Oct. 30, 2018, Hrg. Tr. at 38). "I would have had to file that seven days before today, which would have been even before the adjudicatory hearing, so I decided not to do that because I wanted to hear the evidence." (*Id.*)

{¶55} Thus contrary to Daniel's claims, the record reflects that under 2151.281(I), the GAL investigated the matter, she was involved in court hearings, and she was involved in pursuing what she felt were the best interests of the children. We cannot find based on the record that the GAL failed to perform her duties. Moreover, to any extent Daniel argues that the GAL did not comply with Superintendence Rule 48, we again emphasize that this rule does not create substantive rights. *In re H.M.*, 3d Dist. Logan Nos. 18-18-46, 47, 55, 56, 2019-Ohio-3721, ¶ 81. Furthermore, Daniel would have to demonstrate some prejudice

here based on his claimed deficiency by the GAL, and any attempt at doing so, which is not evident in his brief, is purely speculative. *Id.* For all of these reasons, Daniel's fifth assignment of error is overruled.

*Second Assignment of Error*

{¶56} In his second assignment of error, Daniel argues that the trial court erred by ordering the case plans into effect in this matter. He contends that before the case plans could be ordered into effect the trial court had to take evidence so that it could evaluate whether the case plan objectives were in the children's best interests.

Relevant Authority

{¶57} Revised Code 2151.412 discusses case plans. The implementation of a case plan is discussed in R.C. 2151.412(D) and (E), which read as follows.

> **(D) Each public children services agency and private child placing agency that is required by division (A) of this section to maintain a case plan shall file the case plan with the court prior to the child's adjudicatory hearing but no later than thirty days after the earlier of the date on which the complaint in the case was filed or the child was first placed into shelter care. If the agency does not have sufficient information prior to the adjudicatory hearing to complete any part of the case plan, the agency shall specify in the case plan the additional information necessary to complete each part of the case plan and the steps that will be taken to obtain that information. All parts of the case plan shall be completed by the earlier of thirty days after the adjudicatory hearing or the date of the dispositional hearing for the child.**
>
> **(E) Any agency that is required by division (A) of this section to prepare a case plan shall attempt to obtain an agreement among**

**all parties, including, but not limited to, the parents, guardian, or custodian of the child and the guardian ad litem of the child regarding the content of the case plan. If all parties agree to the content of the case plan and the court approves it, the court shall journalize it as part of its dispositional order. If the agency cannot obtain an agreement upon the contents of the case plan or the court does not approve it, the parties shall present evidence on the contents of the case plan at the dispositional hearing. The court, based upon the evidence presented at the dispositional hearing and the best interest of the child, shall determine the contents of the case plan and journalize it as part of the dispositional order for the child.**

Analysis

{¶58} Importantly, no party formally objected to the case plan as a whole that was filed in this matter, which was first docketed in August of 2018. However, Daniel did repeatedly "refuse to sign" the case plan and the amendments, and he adamantly disagreed with some of the provisions, asserting they were improper or unnecessary. Nevertheless, the case plan was filed early in the proceedings and presented to Daniel. Although Daniel may not have appreciated the case plan requirements, this does not change the fact that the case plan was known to him. *See In re S.H.*, 12th Dist. Butler Nos. CA2020-02-023, 024, 2020-Ohio-3499,¶ 15.

{¶59} Daniel now suggests in his brief that the trial court needed to hear evidence before implementing a case plan, specifically citing R.C. 2151.412(D) in support; however, this requirement is simply not stated in that statutory subsection. Daniel offers no case authority to the contrary in support of his position.

-28-

Nevertheless, taking evidence is mentioned in subsection (E), which perhaps he meant to reference.

{¶60} Regardless of the appropriate statutory subsection, to the extent that Daniel contends that *no* evidence was introduced at the dispositional hearing for the trial court to make its determination regarding the implementation of case plans, this is incorrect, as the GAL entered letters from the children's teachers into evidence showing how well they were doing in their new temporary placement. Further, during the dispositional phase, the trial court permitted all of the parties, including Daniel's attorney to make statements regarding disposition *and* the case plan. In fact, Daniel's attorney specifically stated she did not need more time to prepare for disposition and she did not attempt to call any witnesses. She did argue on Daniel's behalf, however, and she made it known that Daniel did not want the children with paternal grandparents, that he objected to supervised visitation, and that if Daniel's visitation had to be supervised, he requested that the visitation be somewhere other than the Agency.

{¶61} The trial court took the arguments of Daniel's attorney into account. The trial court did not agree with Daniel's request to remove the children from the temporary care of paternal grandparents, particularly given the evidence presented; however, the trial court did agree to modify the case plan so that visitation would be done at Adriel.

**{¶62}** Importantly, Daniel did not make any other specific objections to the case plan at the dispositional hearing. Ohio Appellate Courts have held that challenges to the timeliness of case plans that are not raised before the trial court are waived for purposes of appeal. *See In re Miller*, 5th Dist. Licking No. 04CA32, 2005-Ohio-856. ¶ 21; *In re J.J.*, 8th Dist. Cuyahoga No. 86276, 2007-Ohio-535, ¶ 32. It similarly stands to reason that Daniel's failure to challenge any issues related to the case plans before the trial court would be waived for purposes of appeal.

**{¶63}** Notwithstanding any waiver, on the record before us, we cannot find that the trial court erred regarding implementing case plans in this matter. Therefore, Daniel's second assignment of error is overruled.

*Sixth Assignment of Error*

**{¶64}** In Daniel's sixth assignment of error, he argues that the trial court permitted impermissible hearsay on multiple occasions at the adjudicatory hearing.

Standard of Review

**{¶65}** "Adjudicatory hearings require strict adherence to the Rules of Evidence." *In re S.L.*, 3d Dist. Union No. 14-15-07, 2016-Ohio-5000, ¶ 23, citing *In re Beebe,* 3d Dist. Allen No. 1–02–84, 2003-Ohio-1888, ¶ 10, citing *In re Baby Girl Baxter,* 17 Ohio St.3d 229, 233 (1985). "Accordingly, hearsay is not admissible in an adjudicatory hearing unless the statement falls within a recognized exception to the hearsay rule." *In re O.H.,* 9th Dist. Summit No. 25761, 2011-Ohio-

5632, ¶ 21, citing Evid.R. 802. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). "Under Evid.R. 802, hearsay is inadmissible unless it falls within an exception provided by the rules of evidence." *Secy. of Veterans Affairs v. Leonhardt,* 3d Dist. Crawford No. 3-14-04, 2015-Ohio-931, ¶ 40.

{¶66} "The trial court has broad discretion concerning the admissibility of evidence." *Leonhardt* at ¶ 39, citing *Beard v. Meridia Huron Hosp.,* 106 Ohio St.3d 237, 2005-Ohio-4787, ¶ 20. "A decision to admit or exclude evidence will be upheld absent an abuse of discretion." *Beard* at ¶ 20, citing *O'Brien v. Angley,* 63 Ohio St.2d 159, 164–165, (1980). An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, (1983). "Even in the event of an abuse of discretion, a judgment will not be disturbed unless the abuse affected the substantial rights of the adverse party or is inconsistent with substantial justice." *Beard* at ¶ 20, citing *O'Brien* at 164–165. However, "Generally, this court will not in the first instance consider errors that the appellant could have called to the trial court's attention." *In re J.L.*, 10th Dist. Franklin No. 15AP-889, 2016-Ohio-2858, ¶ 59, citing *In re Pieper Children*, 85 Ohio App.3d 318, 328 (12th Dist.1993).

Analysis

{¶67} Daniel claims that there were numerous incidents in this case where the trial court allowed impermissible hearsay. The first incident he cites was during the testimony of Danielle F., the mother of P.C. and A.C. Danielle testified *on cross-examination by Daniel's attorney* about a time she had gone over to Daniel's residence and the house did not have any meat, milk or anything ready-to-eat in the refrigerator or the freezer. Danielle then stated that the children told her that they were hungry and that they did not eat dinner the prior night. Daniel claims this testimony was hearsay on appeal, though no objection was made to the trial court, which would lead to a plain error analysis.

{¶68} Notably Daniel does not even attempt to demonstrate how this statement is prejudicial in his brief, appearing to rely on prejudice being self-evident. His failure to demonstrate prejudice is important here because the statements related to the children being hungry and not eating were cumulative to others made during Daphne S.'s testimony through her own direct observations. " '[T]he erroneous admission or exclusion of hearsay, cumulative to properly admitted testimony, constitutes harmless error.' " *In re H.D.D.,* 10th Dist. Franklin Nos. 12AP–134, 12AP–135, 12AP–136, 12AP–137, 12AP–146, 12AP–147, 12AP–148, 12AP–149, 2012-Ohio-6160, ¶ 45, quoting *State v. Hogg,* 10th Dist. Franklin No. 11AP–50, 2011-Ohio-6454, ¶ 46. We can find no error here where the

purported hearsay statement was elicited *on cross-examination*, was not objected to by counsel, and was cumulative to other testimony.

{¶69} Daniel next argues that Danielle was impermissibly permitted to testify about hearsay statements made by the oldest son, D.C.  However, Danielle directly observed the cited conversation, thus it could fall under a present sense impression or excited utterance given that it was during a verbal fight between father and son.  Evid.R. 803(1), (2).  Regardless, there was no objection made and Daniel does not attempt to make an argument regarding prejudice, which is particularly important because D.C. is emancipated and no longer part of the dependency cases before us on appeal.  We can find no error here, let alone plain error or prejudicial error.

{¶70} Daniel next claims that the testimony of Elizabeth F. was "literally all hearsay and was objected to but counsel was overruled." (Appt.'s Br. at 24).  Daniel cites to various page numbers from Elizabeth's testimony but does not point to any specific testimony or make an argument regarding the testimony.  Instead he states that his argument regarding hearsay was necessarily limited by page limits in the brief.

{¶71} "It is not the duty of this [C]ourt to construct legal arguments in support of an appellant's appeal."  *Camp v. Star Leasing Co.,* 10th Dist. Franklin No. 11AP–977, 2012–Ohio–3650, ¶ 67; *Union Bank Co. v. Lampert*, 3d Dist.

Auglaize No. 2-13-32, 2014-Ohio-4427, ¶ 21.  It is similarly not the duty of this Court to identify the hearsay on a cited page, determine whether it fits into an exception, then, if it does not fit into a hearsay exception, manufacture an argument as to how the testimony might be prejudicial here, and then finally proceed to address it in the context of all the testimony.  We decline to engage in such a process here.

{¶72} Even if we did elect to engage in such a process, some of the testimony pointed to involves D.C., who is no longer part of the case, and some of the testimony appears to be cumulative to other issues already raised such as lack of food in the home and children missing meals.

{¶73} Lastly, Daniel argues that there were many other examples of hearsay permitted throughout the testimony, but he does not even attempt to cite page numbers or instances due to "space limitations" in his brief.  We decline to engage in manufacturing hearsay arguments for him.  For all of these reasons, Daniel's sixth assignment of error is overruled.

*Fourth Assignment of Error*

{¶74} In Daniel's fourth assignment of error, he argues that the trial court erred by permitting testimony impeaching Daniel's witnesses with prior convictions that were older than ten years.

Standard of Review

{¶75} "A trial court is afforded broad discretion in determining the extent to which such evidence may be admitted under Evid.R. 609." *State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, ¶ 27, citing *State v. Wright*, 48 Ohio St.3d 5, (1990), syllabus. *See State v. Walburg*, 10th Dist. Franklin No. 10AP-1087, 2011-Ohio-4762, ¶ 59, quoting *State v. Goney*, 87 Ohio App.3d 497, 501, 622 N.E.2d 688 (2d Dist.1993), citing *Wright* (" 'Evid.R. 609 as amended in 1991 makes clear that Ohio trial judges have discretion to exclude prior convictions where the court determines that the probative value of the evidence outweighs the danger of unfair prejudice or confusion of the issues, or of misleading the jury.' "). Therefore, we review the trial court's determination under Evid.R. 609 for an abuse of discretion.

{¶76} Despite the broad discretion generally afforded under Evid.R. 609, Ohio Appellate Courts have held that, " '[g]enerally, convictions over ten years old rarely should be admitted under Evid.R. 609(B), and only in exceptional circumstances.' " *Keaton v. Abbruzzese Bros.*, 189 Ohio App.3d 737, 2010-Ohio-3969, ¶ 11, quoting *Ruff v. Bowden*, 10th Dist. Franklin No. 94APE08-1116, 1995 WL 141045 (Mar. 28, 1995), citing *Lenard v. Argento*, 699 F.2d 874 (7th Cir.1983); *State v. Ross*, 10th Dist. Franklin No. 17AP-141, 2018-Ohio-3027, ¶ 20.

Analysis

{¶77} Evidence Rule 609 controls impeachment by evidence of conviction of a crime. In pertinent part, it reads as follows.

**(A) General Rule. For the purpose of attacking the credibility of a witness:**

**(1) subject to Evid.R. 403, evidence that a witness other than the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the witness was convicted.**

**(2) notwithstanding Evid.R. 403(A), but subject to Evid.R. 403(B), evidence that the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the accused was convicted and if the court determines that the probative value of the evidence outweighs the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.**

**(3) notwithstanding Evid.R. 403(A), but subject to Evid.R. 403(B), evidence that any witness, including an accused, has been convicted of a crime is admissible if the crime involved dishonesty or false statement, regardless of the punishment and whether based upon state or federal statute or local ordinance.**

**(B) Time Limit. Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement, or the termination of community control sanctions, post-release control, or probation, shock probation, parole, or shock parole imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than ten years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.**

{**¶78**} The interplay between Evid.R. 609(A) and 609(B) has been stated as follows.

> **"What we have here is a rule, an exception to the rule, and then, an exception to the exception. To attack a defendant's credibility, evidence of his prior convictions may be introduced. This is the rule in Evid.R. 609(A)(2). Where the conviction is more than ten years old, however, it is not admissible. This is the exception in Evid.R. 609(B). Where the probative effect of the ten-year-old conviction [substantially] outweighs the prejudicial effect of its admission, the court may admit it. This is the exception to the exception."**

*State v. Sommerville*, 9th Dist. Summit No. 25094, 2010-Ohio-3576, ¶ 5, quoting

*State v. Fluellen*, 88 Ohio App.3d 18, 22 (4th Dist.1993).

**{¶79}** In this case, Daniel argues that the trial court erred by permitting impeachment testimony of two of Daniel's witnesses. He contends that the impeachment included convictions that were older than ten years, and thus the impeachment was facially inadmissible under Evid.R. 609, absent some analysis by the trial court, which was not done here. We will address each of Daniel's claims of improper impeachment in turn.

**{¶80}** As to the first claim of improper use of impeachment under Evid.R. 609, Daniel presented the testimony of his mother, Donna W., at the adjudication hearing. Donna provided testimony that she was in Daniel's house often, as often as four times each week, and that she regularly came over to see the children and make meals. She testified that she had never seen any bed bugs in Daniel's home, that the children had dishes, food, clothes, and that they ate regularly.

{¶81} On cross-examination, the attorney for Danielle, the mother of P.C. and A.C., asked Donna about whether she had a criminal history in the following dialogue.

Q.　To the question of veracity, do you have a criminal record?

A.　What does that –

Q.　Anything in court?　Ever been charged with any criminal record?

[Daniel's Attorney]:　Objection, relevance.

[Danielle's Attorney]:　It is a question of veracity on the testimony.

THE COURT:　I was waiting to see if anybody else wanted to chime in.　Overruled.

Q [Danielle's Attorney].　Have you ever been charged with any criminal –

A.　Yes.

Q.　What was that?

A.　In 1996.

Q.　What was the charge?

A.　Theft by deception.

Q.　Is what?

A.　Theft by deception.

Q.　Okay.

**[Danielle's Attorney]: No further questions.**

(Tr. at 139-140).

{¶82} Counsel for the mother of D.C., as the next attorney to cross-examine Donna, asked one follow up question, "Theft by deception is your only criminal conviction?" (Tr. at 141). Donna responded, "yes." (*Id.*) There was no objection to the question at that time, and no further mention of Donna's criminal record.

{¶83} Daniel claims on appeal that it was error for the trial court to admit the preceding testimony related to Donna's conviction, which was in excess of 20 years old, well outside the 10-year window in Evid.R. 609. Further, Daniel claims that to any extent the trial court had discretion in the matter to still admit the testimony, the trial court conducted no analysis.

{¶84} After reviewing the record, we find that it is important to focus on the actual sequence of questions and answers before the trial court. Donna was initially asked about her criminal record and Daniel's counsel objected *on the grounds of relevance*. A criminal conviction could be impeachment evidence, so the trial court overruled the objection. There is no indication that at the time the trial court overruled Daniel's objection that the trial court was aware that Donna had any criminal convictions at all, let alone when they might have occurred. It was only after the objection was overruled that Donna revealed her one criminal conviction and the fact that it fell outside of the 10-year time window. Once the timing of the

conviction was revealed, Daniel's attorney did not make an objection based on Evid.R. 609. Daniel similarly did not make an objection to the one question asked by counsel for D.C.'s mother, where the attorney seemed to be fishing for other convictions. If an objection was made after Donna's testimony was revealed, it would have been clear to the trial court that the testimony regarding Donna's prior conviction was generally inadmissible. Once the trial court was aware of the actual testimony, there was no objection made from which a trial court could rule that it was inadmissible.

{¶85} Further, it is important to emphasize that, "Appellate courts presume that in a bench trial, a trial court considered only relevant and admissible evidence." *City of Beachwood v. Pearl*, 8th Dist. Cuyahoga No. 105743, 2018-Ohio-1635, ¶ 30; *State v. Crawford*, 8th Dist. Cuyahoga No. 98605, 2013-Ohio-1659, ¶ 61; *State v. Chandler*, 8th Dist. Cuyahoga No. 81817, 2003-Ohio-6037, ¶ 17. The trial court, as trier-of-fact in this case, was not presented with an opportunity to address any objection based on Evid.R. 609 once the actual testimony related to Donna's conviction was presented. Generally this evidence is inadmissible. Given the presumption that a trial court considers only relevant and admissible evidence, we presume that the trial court did not actually consider the conviction as impeachment evidence. There is nothing in the record to suggest otherwise.

{¶86} Moreover, in the trial court's extensive written findings it did not mention anything about Donna's conviction. Rather the trial court generally stated at the beginning of its entry that it had applied the "usual tests of credibility to their testimony, including, but not limited to their interest in the outcome for this case." This is important because Donna had a clear potential bias in this case given that Daniel was her son.

{¶87} Based on all of the evidence presented, the fact that there is no indication that the trial court actually considered Donna's conviction once it was known to be outside of the appropriate time window under Evid.R. 609, and because Donna had other potential bias that the trial court could consider, we cannot find that there was error here, or if there was error, it was anything other than harmless.

{¶88} Daniel next argues that the trial court allowed impermissible impeachment evidence under Evid.R. 609 during the testimony of Gary D. Gary was a friend of Daniel who was often over at Daniel's residence. Gary had children who played with Daniel's children. Gary testified that Daniel's house was lived-in but there were not issues with cleanliness. He also testified he had never noticed the children to be without sufficient clothing and that he had never seen visible medical issues.

{¶89} Then, on cross-examination, the attorney for D.C.'s mother engaged in the following discussion with Gary.

Q. Mr. D[.], do you have any criminal record?

A. Yes.

Q. What was that?

A. I – you would have to refer to a background check. I couldn't tell you, I don't remember.

Q. You [sic] convicted of theft in 2006?

A. It's possible, yes. – no. No, I don't think I was convicted of it. I'm not sure.

Q. Were you charged with theft?

A. One time, yes.

Q. Okay. Were you convicted of something?

A. You'd have to refer to a background check. I couldn't – I –

Q. Were you on probation?

A. I have been on probation. I couldn't tell you what for.

Q. Okay. While you were on probation did you have any probation violations filed against you?

A. I don't – I don't recall. I don't recall if I had had [sic] a PV. I'm not sure. I don't think so. It's been several years ago. This has been – it's been a long time ago, so I couldn't tell you.

Q. Was it here in Logan County.

A. I think so, yes.

Q. So if I told you the Logan County records indicate you were convicted of theft in 2006 and a misuse of credit cards is dismissed,

**and during that case you were convicted of – or that you had violated your probation. That could all possibly be true, right?**

**[Daniel's Attorney]: I'm going to object to relevance.**

**[Elizabeth's Attorney]: It is relevant.**

**The Court: Overruled.**

**[Elizabeth's Attorney]: Thank you, Your Honor. I have nothing further.**

(Tr. at 166-167).

{¶90} The preceding transcript indicates that Gary was asked no further questions. In fact, Elizabeth's attorney never even allowed Gary to answer her question after the trial court overruled the objection.

{¶91} Importantly, the preceding dialogue does not establish that Gary ever did have a conviction. Gary was evasive in his answers, and when he was directly asked about a specific conviction, there was an objection and he never answered the attorney's question. Thus we cannot find that impermissible impeachment testimony was permitted when *an answer was not actually given by Gary regarding any conviction*. Therefore, we find no error here. Even if we did, there is no indication that the trial court took Gary's evasive answers regarding a potential conviction into account in its decision. For all of these reasons, Daniel's sixth assignment of error is overruled.

*Seventh Assignment of Error*

**{¶92}** In his seventh assignment of error, Daniel argues that he was denied a fair adjudication hearing as a result of the cumulative errors that he claims occurred throughout the hearing.

Standard of Review

**{¶93}** Generally, in criminal cases, "Under [the] doctrine of cumulative error, a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial court error does not individually constitute cause for reversal." *State v. Spencer*, 3d Dist. Marion No. 9-13-50, 2015-Ohio-52, ¶ 83, citing *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, ¶¶ 222-224 and *State v. Garner*, 74 Ohio St.3d 49, 64 (1995). "To find cumulative error, a court must first find multiple errors committed at trial and determine that there is a reasonable probability that the outcome below would have been different but for the combination of the harmless errors." *State v. Stober*, 3d Dist. Putnam No. 12-13-13, 2014-Ohio-5629, ¶ 15, quoting *In re J.M.*, 3d. Dist. Putnam No. 12-11-06, 2012-Ohio-1467, ¶ 36. Notably, the case *sub judice* is not a criminal case, however, we will review the issue due to the substantial nature of parental rights involved.[6]

---

[6] There is an open question as to whether the cumulative error doctrine applies at all in *civil* cases. For a discussion, *see Dept. of Nat. Resources v. Knapke Tr.*, 3d Dist. Mercer No. 10-13-25, 2015-Ohio-470, 28, ¶¶ 54-56.

Analysis

{¶94} Rather than arguing that the previously addressed assignments of error were cumulatively prejudicial, if not individually prejudicial, Daniel contends that there were numerous other, as yet unaddressed issues that cumulatively amounted to prejudicial error. He cites at least ten new portions of the transcripts where he feels some error was made; however, these claims are made with minimal discussion of what the errors purportedly were and the claims are entirely devoid of legal citation as to how an error occurred, let alone how any purported error was prejudicial. This does not comply with appellate rule 12(A)(2) which states, "The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." " 'The failure to argue separately assigned errors is grounds for summary affirmance.' " *Dulebohn v. Waynesfield*, 3d Dist. Auglaize No. 2-20-05, 2020-Ohio-4340, ¶ 22, quoting *Cook v. Wilson*, 10th Dist. Franklin No. 05AP-699, 165 Ohio App.3d 202, 2006-Ohio-234, ¶ 15, citing *Guerry v. Guerry*, Cuyahoga App. No. 77819, 2001 WL 1230830 (Oct. 11, 2001).

{¶95} After a review of the record, we do not find that the purported cumulative errors, both referenced in the prior assignments of error, and those argued under the seventh assignment of error without legal authority, deprived

Daniel of a fair adjudication hearing. Based on the evidence we cannot say that the issues raised by Daniel, even if accepted as erroneous, would create a reasonable probability that the outcome of the hearing would have been different. For these reasons, Daniel's seventh assignment of error is overruled.

*Eighth Assignment of Error*

{¶96} In his eighth assignment of error, Daniel argues that the trial court erred by granting the requests of the children's mothers to have them vaccinated against his wishes.

Analysis

{¶97} After the children were found to be dependent in this case, the mother of P.C. and A.C. filed a motion to have the children vaccinated. Daniel opposed vaccination of his children, so the trial court held a hearing on the matter on August 22, 2019. At the hearing, C.C.'s mother joined the motion to have C.C. vaccinated. Based on the testimony and evidence presented at the hearing, the trial court made the following findings of fact in its August 18, 2020 judgment entry.

> **Mother [of P.C. and A.C.] * * * filed a Motion on June 27, 2019, for her children to be vaccinated.**
>
> **The Guardian ad Litem * * * joined the motion.**
>
> **Mother of [C.C.] * * * joined the Motion for her child.**
>
> **Daniel C[.] objects to vaccinations.**

**Father testified that he does not want his children to be vaccinated.**

**Father stated that vaccinations can create death and neurological damage.**

**Father stated that he has done much research on the subject.**

**Father stated that his research was from three websites, ProCon.org, VacTruth.org, and the National Vaccine Information Center.**

**ProCon.org is a website of opinions. Anyone may write their opinion and it need not be based on facts. VacTruth.org and The National Vaccine Information Center are known to be a website against vaccinations.**

**The Court does not find these sources to be credible.**

**Father testified under oath that his decisions were made from what was written on these sites, and so he did not base his decisions on scientific research and recommendations.**

**When asked, Father did not know whether more children are hurt from various diseases or from vaccinations.**

**Mother, Danielle F[.], presented vaccination information from the Center for Disease Control (CDC).**

**Father was not familiar with the safety information on vaccinations provided by the Center for Disease Control (CDC). Mother, Danielle F[.], presented vaccination information from the World Health Organization (WHO).**

**Father was not familiar with the safety information on vaccinations provided by the World Health Organization (WHO). Mother, Danielle F[.], presented vaccination information from the Ohio Department of Health.**

**Father was not familiar with the safety information on vaccinations provided by the Ohio Department of Health.**

**Mother, Danielle F[.], presented vaccination information from the American Academy of Pediatrics.**

**Father was not familiar with the safety information on vaccinations provided by the American Academy of Pediatrics.**

**Father stated that he was afraid his children would be harmed if vaccinated.**

**Father stated that harmful ingredients include mercury and aluminum.**

**Father provided no scientific or expert evidence to support his statement that vaccines include mercury and aluminum.**

**Father provided no proof that such ingredients are actually contained in vaccines.**

**Father stated that he did not like the fact that a part of the disease is in the vaccine.**

**Father stated that Mother, Danielle F[.], did not want the children vaccinated when they were together.**

**However, Father admitted that Mother, Danielle F[.] took the children for vaccinations when they were together.**

**Father agreed that the children received vaccinations when they were younger.**

**Father could not remember any side effects from former vaccinations.**

**Father admitted that his objection to vaccinations is not based on any religious objection.**

**Father stated that since there are no outbreaks of diseases in the area his children are not in danger of catching these diseases.**

**Father stated that the children should be able to make up their own mind about vaccination when they are old enough.**

**Father believes that the risk of the vaccine is greater than the risk of the diseases.**

**Father provided no statistics or studies to support his belief that vaccines carry a greater risk than the actual disease.**

**Father did not provide compelling evidence on the lack of safety of vaccines.**

**Mother presented information from the CDC, WHO, the Ohio Department of Health, and the American Academy of Pediatrics.**

**All four organizations state that vaccines are safe and that severe side effects are rare.**

**All four organizations base their decisions on research and scientific evidence.**

**Vaccines are credited with being safe and effective.**

**To the Court's knowledge, the children attend public school.**

{¶98} Based on the factual findings in its judgment entry, the trial court made

the following conclusions of law.

**Ohio Revised Code Section 3313.671 requires proof of required immunizations for a child to attend school.**

**These vaccinations include mumps, rubeola, rubella, chicken pox, poliomyelitis, diphtheria, pertussis, tetanus, hepatitis B, and meningococcal disease.**

> **A child may be exempted from vaccinations under Section 3313.671[B](4) for reasons of conscience, including religious convictions.**
>
> **A child may be exempted from vaccinations under Section 3313.671[B](5) if their physician certifies in writing that such immunization against any disease is medically contradicted.**
>
> **Father testified that his decision not to vaccinate is not based on religious convictions and that his children are healthy.**
>
> **Father has not provided any type of evidence from a physician that a vaccination is medically contradicted.**
>
> **Therefore, the children cannot attend school without vaccinations.**

(*Id.*) Ultimately the trial court denied Daniel's motion against vaccination. The trial court granted the mothers' requests to have the children vaccinated.

{¶99} On appeal, Daniel argues that the trial court erred by denying his motion against vaccination. More specifically, he takes issue with the fact that the mothers who supported vaccination did not testify in support of their motion, relying only on cross-examination. He also maintains that "[r]easonable, educated people can hold differing opinions regarding vaccinating their children." (Appt.'s Br. at 29). Further, he contends that since the evidence was in dispute as to what was presented between the parties, the trial court placed a heavy emphasis on its own experience with being vaccinated. Essentially, Daniel contends that the trial court was biased. Finally, he argues that R.C. 3313.671(B)(4), contains a philosophical objection for parents who do not want to immunize their children, which requires a

parent to provide a written statement to the school. Daniel testified that he had signed an exemption on many occasions.

{¶100} In our own review of the matter, we emphasize that the trial court conducted a thorough, written analysis, indicating what he found credible and why. Although Daniel argues that he was the only individual to present actual evidence at the hearing through his websites, the trial court found the websites used by Daniel to have minimal or no probative value, declaring that they were not credible sources. To the contrary, the trial court was persuaded by the cross-examination of Daniel with the use of, *inter alia*, CDC and WHO information. Thus to the extent that Daniel seems to argue that the evidence did not support the trial court's decision, we disagree. Giving deference to the trial court's factual findings, we cannot find that the trial court erred.

{¶101} Moreover, the trial court referenced the fact that the children were in public schools and generally had to be immunized, subject to exceptions such as for religion, pursuant to R.C. 3313.671. Daniel specifically stated he did not object to vaccinations on religious grounds.

{¶102} Furthermore, it is important to note that Daniel has not always been against immunizations, as the children have had some vaccinations. Daniel could not identify any detrimental impact as a result of these prior vaccinations. It seems

possible that given further research, Daniel could change his mind again on vaccinations, but by that time a child could have gotten sick.

**{¶103}** Finally, we would note that although there is not a body of case law on this issue in Ohio, having children vaccinated has been addressed in juvenile courts of other states, and vaccination orders have been upheld. *See In re S.P.*, 53 Cal.App.5th 13, 266 Cal.Rptr.3d 770 (finding that a juvenile court has the authority to order vaccinations for dependent children under its jurisdiction); *In Interest of A.W.*, 187 A.3d 247, 2018 PA Super 118 (2018) (juvenile court could order vaccinations over parents' objections); *In re K.Y.B.*, 242 Md.App. 473, 215 A.3d 471 (juvenile court did not abuse its discretion in concluding that the State's compelling interest in protecting the health of the child outweighs mother's belief that vaccination contravenes her faith); *In re Deng*, 314 Mich.App. 615, 618, 887 N.W.2d 445, 447 (Mich.App.2016) (holding, "[b]ecause the trial court has the authority to make medical decisions over a respondent's objections to vaccination for children under its jurisdiction and the court did not clearly err by determining that vaccination was appropriate for the welfare of respondent's children and society, we affirm."); *New Jersey Div. of Child Protection & Permanency v. J.B.*, 459 N.J.Super. 442, 457, 212 A.3d 444, 453 (N.J. Super. Ct. App. Div.2019); *In re C.R.*, 257 Ga.App. 159, 570 S.E.2d 609 (Ga.App.2002) ("order permitting C.R. to be immunized should be affirmed."). We

are aware that the preceding cases are from other states, which contain differing statutory schemes related to the care of children; however, we use the cases as an example, and persuasive authority, that the trial court has the authority to order the vaccination of children over the objections of a parent.

{¶104} Based on the record before us, we cannot find that the trial court erred by granting the mothers' request to have the children vaccinated. For all of these reasons, Daniel's eighth assignment of error is overruled.

*Conclusion*

{¶105} For the foregoing reasons, Daniel's assignments of error are overruled and the August 10, 2020, and August 18, 2020, judgments of the Logan County Common Pleas Court, Juvenile Division, are affirmed.

***Judgments Affirmed***

**ZIMMERMAN, J., concurs.**

**/jlr**


**WILLAMOWSKI, P.J., Concurring Separately.**

{¶106} I concur fully with the judgments and reasoning as to the first seven assignments of error. Although I concur with the decision to affirm the judgment of the trial court as to the eighth assignment of error, I write separately as there is an underlying issue that has not been raised, specifically that the children are in the

temporary custody of the paternal grandfather and step-grandmother. Pursuant to Ohio Adm.Code 5101:2-1-01, temporary custody is defined as a type of legal custody of a child who has been removed from the child's home which may be terminated at any time at the direction of the court. (308). A person with legal custody is the one with the right to make decisions regarding the medical care of the child. Ohio Adm.Code 5101:2-1-01(171). Since the children are in the temporary legal custody of the grandfather and his wife, they are the ones responsible for determining the appropriate medical care for the children. However, the grandfather and his wife, as the custodians of the children, did not object to the decision of the trial court requiring the vaccination of the children. Because no objection was made by the custodians who had the authority to make that determination, whether the trial court had the right to consider and rule on the motion by the mothers in this case need not be determined herein. For this reason I write separately.