[Cite as *In re A.G.*, 2024-Ohio-1846.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

IN RE:

A.G.,

ABUSED, NEGLECTED AND/
OR DEPENDENT CHILD.
[LAMARCUS G. - APPELLANT]

CASE NO 5-23-29

O P I N I O N

**Appeal from Hancock County Common Pleas Court**
**Juvenile Division**
**Trial Court No. 2021 AND 0022**

**Judgment Affirmed**

**Date of Decision:  May 13, 2024**

APPEARANCES:

*Allison Boggs* for Appellant

*Emil G. Gravelle, III* and *Justin J. Kahle* for Appellee,
Hancock County CPSU

**WALDICK, J.**

{¶1} Father-appellant, Lamarcus G. ("Lamarcus"), brings this appeal from the July 24, 2023, judgment of the Hancock County Common Pleas Court, Juvenile Division, granting permanent custody of A.G. to the Hancock County Job and Family Services, Children's Protective Services Unit ("CPSU"). On appeal, Lamarcus argues that the trial court's decision granting permanent custody of A.G. to CPSU was against the manifest weight of the evidence, that CPSU failed to use reasonable case planning and diligent efforts to support reunification, that the trial court permitted impermissible hearsay at the final hearing, and that he received ineffective assistance of trial counsel. For the reasons that follow, we affirm the judgment of the trial court.

*Background*

{¶2} A.G. was born in July of 2021. She is the child of Lanayia C. ("Lanayia") and Lamarcus.

{¶3} This case initiated on September 8, 2021, when CPSU received a report of domestic violence between Lamarcus and Lanayia while A.G. was nearby. More specifically, it was alleged that Lamarcus "pulled [Lanayia] to the floor, grabbed her face, choked her and pulled her hair." As a result of the incident, Lamarcus was arrested and charged with domestic violence as a fourth degree felony. It was noted

that he had a criminal history of domestic violence, assault, drug use, and kidnapping.

**{¶4}** Lamarcus was released on bond with a "no contact order in place." A caseworker with CPSU met with Lanayia and explained that Lamarcus was not allowed in the residence. At that time, Lanayia reiterated her initial claims regarding domestic violence to the caseworker and stated that there had been other incidents in the past.

**{¶5}** However, Lanayia later requested that the charges against Lamarcus be dismissed and she allowed Lamarcus to move back into the home with her and A.G. Although Lamarcus acknowledged that a physical altercation had occurred at the residence on September 8, 2021, he claimed that the details were exaggerated and had only involved pushing.

**{¶6}** Once Lamarcus returned to the residence Lanayia subsequently cancelled visits with caseworkers and refused to meet with CPSU. She claimed that they did not need services from CPSU and they would handle the matter on their own.

**{¶7}** On October 21, 2021, CPSU filed a complaint alleging A.G. to be dependent in violation of 2151.04(C). After a shelter care hearing, A.G. was removed from her parents' care. As the case progressed, Lanayia worked on the case plan. However, Lamarcus indicated to CPSU and to the trial court that he intended to return to his home state of Florida. He claimed that while he wanted A.G. to be

reunited with her mother, he was not going to participate in the case plan or seek *any* visitation.

{¶8} On December 16, 2021, A.G. was adjudicated dependent by consent of the parties and placed in CPSU's temporary custody. Lamarcus was not present at the hearing but he was represented by counsel. Lamarcus's attorney indicated that he did not know where Lemarcus was located and that he had not heard from him. Regardless, Lamarcus's attorney reiterated that Lamarcus did not want to be part of the case plan or to be granted any visitation.

{¶9} By all accounts, over the next several months Lanayia made significant progress on the case plan and was headed for reunification with A.G. A review hearing was held March 17, 2022.[1] Lamarcus's attorney was present at the hearing; however, Lamarcus was not at the hearing. His attorney claimed that Lamarcus had moved to Florida. CPSU had no contact with Lamarcus other than mailings.

{¶10} Tragically, on March 18, 2022, Lanayia was found dead on a sidewalk as a result of a homicide. The record does not contain further details regarding Lanayia's death.

{¶11} Following Lanayia's death, Lamarcus indicated his desire to reengage with CPSU to seek custody of A.G. A new case plan was created with the goal of reunifying A.G. with Lamarcus.

---

[1] The transcript in the record is mistakenly dated March 17, 2023, rather than 2022.

**{¶12}** Over the next several months, Lamarcus did not make much progress on his case plan. He disputed his need to attend domestic violence classes because, *inter alia*, the charges against him had been dropped related to Lanayia. Further, Lamarcus had a contentious relationship with CPSU, often feeling that CPSU was not properly aiding him or getting him timely referrals. Lamarcus eventually started remote visitation with A.G.; however, because of A.G.'s young age it was often difficult to hold her attention.

**{¶13}** CPSU ultimately filed for permanent custody of A.G. The GAL in this case filed a written report and recommended that the motion be granted. A hearing was held on CPSU's motion on July 17-18, 2023. At the conclusion of the testimony, the trial court took the matter under advisement.

**{¶14}** On July 24, 2023, the trial court filed its final judgment entry granting CPSU's motion for permanent custody. It is from this judgment that Lamarcus appeals, asserting the following assignments of error for our review.

**First Assignment of Error**

**The trial court's decision granting permanent custody was against the manifest weight of the evidence and amounted to an abuse of discretion.**

**Second Assignment of Error**

**The Agency failed to use reasonable case planning and diligent efforts to reunify [Lamarcus] with his daughter.**

**Third Assignment of Error**

**The trial court committed reversible error by permitting hearsay in the permanent custody hearing.**

**Fourth Assignment of Error**

**[Lamarcus] did not receive effective assistance of counsel.**

*First Assignment of Error*

{¶15} In his first assignment of error, Lemarcus argues that the trial court's determination to award permanent custody of A.G. to CPSU was against the manifest weight of the evidence.

Standard of Review

{¶16} Pursuant to R.C. 2151.414(B)(1), an award of permanent custody must be based on clear and convincing evidence. *In re H.M.* 3d Dist. Logan No. 8-18-46, 2019-Ohio-3721, ¶ 44. "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477.

**{¶17}** The Supreme Court of Ohio has recently clarified when an appellant challenges the award of permanent custody on appeal, we review the matter under either the sufficiency of the evidence standard, or the manifest weight standard, depending on which issue is raised, rather than the abuse of discretion standard. *In re Z.C.*, 173 Ohio St.3d 359, 2023-Ohio-4703, ¶ 1. Here, Lemarcus argues that the trial court's determination was against the manifest weight of the evidence.[2]

**{¶18}** In reviewing whether a trial court's permanent custody decision is against the manifest weight of the evidence, an appellate court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, at ¶ 20, quoting *Tewarson v. Simon,* 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist. 2001). Furthermore, "'[w]eight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the [trier-of-fact] that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight

---

[2] Lemarcus also argued that the trial court abused its discretion, but due to the Supreme Court of Ohio's clarification in *Z.C.*, we apply the manifest weight standard of review as the appropriate standard.

is not a question of mathematics, but depends on its effect in inducing belief.""" (Emphasis *sic*.) *Eastley* at ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting Black's Law Dictionary 1594 (6th Ed. 1990).

{¶19} Finally, issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier-of-fact. *Seasons Coal Co. Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does *not* translate to the record well." (Emphasis sic.) *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997). "'Thus, if the children services agency presented competent and credible evidence upon which the trier of fact reasonably could have formed a firm belief that permanent custody is warranted, then the court's decision is not against the manifest weight of the evidence.'" *In re A.B.*, 3d Dist. Marion No. 9-22-12, 2022-Ohio-4234, ¶ 12, quoting *In re R.M.*, 4th Dist. Athens Nos. 12CA43 and 12CA44, 2013-Ohio-3588, ¶ 55.

## Analysis

{¶20} "[T]he right to raise one's children is an 'essential' and 'basic civil right.'" *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). "Parents have a 'fundamental liberty interest' in the care, custody, and management

of their children." *Id.* quoting *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). "The rights and interests of a natural parent are not, however, absolute: where a court finds that permanent custody is appropriate under the circumstances of a particular case and all due process safeguards have been followed, whatever residual rights a parent may have are properly divested." *In re Leveck*, 3d Dist. Hancock Nos. 5-02-52, 5-02-53, and 5-02-54, 2003-Ohio-1269, ¶ 6.

{¶21} "R.C. 2151.414 outlines the procedures that protect the interests of parents and children in a permanent custody proceeding." *In re N.R.S.*, 3d Dist. Crawford Nos. 3-17-07, 3-17-08 and 3-17-09, 2018-Ohio-125, ¶ 12, citing *In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, ¶ 26. "When considering a motion for permanent custody of a child, the trial court must comply with the statutory requirements set forth in R.C. 2151.414." *In re A.M.*, 3d Dist. Marion No. 9-14-46, 2015-Ohio-2740, ¶ 13. Specifically, "R.C. 2151.414(B)(1) establishes a two-part test for courts to apply when determining whether to grant a motion for permanent custody: (1) the trial court must find that one of the circumstances in R.C. 2151.414(B)(1)(a)-(e) applies, and (2) the trial court must find that permanent custody is in the best interest of the child." *In re Y.W.*, 3d Dist. Allen No. 1-16-60, 2017-Ohio-4218, ¶ 10.

{¶22} "The first prong of that test requires a finding by clear and convincing evidence that one of the statutorily-prescribed situations of R.C. 2151.414(B)(1) is

satisfied." *In re N.F.*, 3d Dist. Marion No. 9-22-40, 2023-Ohio-566, ¶ 19.  In that

respect, R.C. 2151.414 provides:

> (B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
>
> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
>
> (b) The child is abandoned.
>
> (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
>
> (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.
>
> (e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated

an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home.

**{¶23}** Then, if the first prong of the test is satisfied, the trial court must proceed to a determination of the best interests of the child pursuant to R.C. 2151.414(D), which directs the trial court to consider all relevant factors, including but not limited to: (1) the interaction and interrelationship of the child with the child's parents, relatives, foster parents and any other person who may significantly affect the child; (2) the wishes of the child; (3) the custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in R.C. 2151.414(E)(7) through (11) are applicable.

**{¶24}** In this case, the trial court determined with regard to the first prong of the permanent custody test that A.G. had been in the temporary custody of CPSU for twelve or more months of a consecutive twenty-two month period, satisfying R.C. 2151.414(B)(1)(d). The trial court's finding is supported in the record. Further,

this finding alone required the trial court to proceed to the second prong of the permanent custody analysis. *In re A.F.*, 3d Dist. Marion No. 9-11-27, 2012-Ohio-1137, ¶ 55 ("If the trial court determines that *any* provision enumerated in R.C. 2151.414(B)(1) applies, the trial court must determine, by clear and convincing evidence, whether granting the agency permanent custody of the child is in the child's best interest.). Although the trial court did not need to make any further findings under R.C. 2151.414(B)(1) before proceeding to the second prong of the analysis, the trial court did make two additional findings under R.C. 2151.414(B)(1)(a) and R.C. 2151.414(B)(1)(b).

{¶25} Lamarcus makes numerous arguments in his brief that the trial court erred with regard to its findings concerning R.C. 2151.414(B)(1)(a) and (b). However, even if we assumed, without finding, that the trial court erred regarding either or both of these findings, the trial court appropriately determined that the "twelve of twenty-two" factor in R.C. 2151.414(B)(1)(d) was satisfied here. Because this statutory time period was clearly met, there is no error with the trial court's determination regarding the first prong of the permanent custody analysis. Finding no error with the trial court's determination with regard to the first prong of the permanent custody analysis, we move to the trial court's analysis of the second prong—the best interests of the child.

{¶26} With regard to the second prong of the permanent custody analysis, the trial court individually addressed each factor in R.C. 2151.414(D)(1). We will

discuss each factor in turn, determining whether the trial court's findings are supported by the evidence.

**{¶27}** Revised Code 2151.414(D)(1)(a) concerns the relationships of the child with her parents, siblings, and caregivers. Here, the evidence indicated that A.G. was bonded with her foster family. By contrast, the evidence also indicated that Lamarcus had not developed a bond with A.G. through the video visitation. Lamarcus had only visited A.G. in person one time. The trial court determined that this factor weighed in favor of granting the permanent custody motion, and we find that the evidence supports that determination.

**{¶28}** Revised Code 2151.414(D)(1)(b) concerns the wishes of the child as expressed directly or through the GAL. Here, the child was too young to express an opinion. The trial court made no finding regarding this factor. We note, however, that the GAL recommended granting the permanent custody motion. Thus this factor ultimately supported granting the permanent custody motion.

**{¶29}** Revised Code 2151.414(D)(1)(c) concerns the custodial history of A.G. Here, A.G. had been in CPSU's custody, and with her foster family, for more than twelve months out of a consecutive twenty-two month period. The trial court determined that this supported granting the permanent custody motion and we agree. In addition, the trial court also determined that the evidence supported that Lamarcus abandoned A.G. early in this case. While Lamarcus disputes this

characterization, it is supported by the evidence, and through his trial attorney's statements that he did not wish to be involved in the case plan or to have visitation.[3]

{¶30} Revised Code 2151.414(D)(1)(d) concerns the child's need for legally secure placement and whether that can be achieved without granting permanent custody. Here, the GAL and the caseworkers all testified in favor of granting CPSU's permanent custody motion, indicating A.G.'s need for permanency. Although Lamarcus testified that he had made progress on the case plan and was a viable option, his late efforts do not overcome the child's need for permanency. The trial court determined that this factor weighed in favor of granting the permanent custody motion, and we find that the evidence supports that finding.

{¶31} In sum, the trial court determined that the evidence supported the finding that granting permanent custody of A.G. to CPSU was in A.G.'s best interests. Lamarcus attempts to undermine the trial court's findings by pointing to the fact that he only "abandoned" A.G. so that Lanayia could more easily be reunified with A.G. He goes so far as to claim he should be "applauded" for attempting to have no relationship with his child. The trial court viewed Lamarcus's actions differently, and after reviewing the record, we do not find that the trial court clearly lost its way.

---

[3] Abandonment is also relevant under another portion of the permanent custody analysis, R.C. 2151.414(D)(1)(e)/(E)(10).

{¶32} Moreover, in his brief Lamarcus continues to shift any blame on his failure to complete case plan objectives to CPSU, despite his actions being combative, and, arguably at times, threatening. For example, Lamarcus's emails to caseworkers were entered into evidence and they were cited by the trial court as evidence of Lamarcus making threats. Simply put, we find that the trial court's determination that it was in A.G.'s best interests for CPSU to be granted permanent custody of A.G. is supported by the record. Therefore, Lamarcus's first assignment of error is overruled.

*Second Assignment of Error*

{¶33} In his second assignment of error, Lamarcus argues that CPSU failed to use reasonable case planning and diligent efforts to reunify him with A.G.

Relevant Authority

{¶34} The Ohio Revised Code imposes a duty on the part of children's services agencies to make reasonable efforts to reunite parents with their children when the agency has removed the children from the home. *In re J.D.*, 3d Dist. Hancock No. 5-10-34, 2011-Ohio-1458, ¶ 14, citing R.C. 2151.419. To that end, case plans establish individualized concerns and goals, along with the steps that the parties and the agency can take to achieve reunification. *Id.*

{¶35} Agencies have an affirmative duty to diligently pursue efforts to achieve the goals in the case plan. *Id.* "Nevertheless, [when considering reasonable

-15-

efforts,] the issue is not whether there was anything more that [the agency] could have done, but whether the [agency's] case planning and efforts were reasonable and diligent under the circumstances of this case." *In re Leveck,* 3d Dist. Nos. 5-02-52, 5-02-53, 5-02-54, 2003-Ohio-1269, ¶ 10.

Analysis

**{¶36}** Although Lamarcus contends that the trial court erred by finding in its final judgment entry that CPSU engaged in reasonable efforts to support reunification in this case, the trial court had previously determined that CPSU engaged in reasonable efforts to reunify the family in prior judgment entries. Generally, a children's services agency is required to demonstrate reasonable efforts prior to filing a permanent custody motion, not at the permanent custody hearing, *unless it has failed to do so previously. In re I.C.*, 3d Dist. Hancock No. 5-23-15, 2023-Ohio-4707, ¶ 56-57; *In re S.S.*, 4th Dist. Jackson Nos. 16CA7, 16CA8, 2017-Ohio-2938, ¶ 166-169. "Because the trial court entered a reasonable efforts finding before placing the children in the agency's permanent custody," it was not required to do so again. *See id.*

**{¶37}** Nevertheless, in the interests of justice we will review Lamarcus's assignment of error. In its final judgment entry, the trial court made the following finding with regard to reasonable efforts:

> The Court further finds that reasonable efforts have been made by CPSU in that the following services have been made to the parent including a search for relatives, attempts at reunification with

-16-

relatives, case plan services, parenting referrals, mental health and substance abuse referrals, domestic violence counseling, and reimbursement for travel. The Court finds further that reasonable efforts to finalize a permanency plan have been made by CPSU in that they have conducted a search for relatives and have filed for permanent custody.

{¶38} Here, Lamarcus argues that CPSU never actually intended to reunify A.G. with him because the case was never transferred to Florida. However, testimony indicated that while Lamarcus's home was conditionally approved by a Florida agency, it was not approved by CPSU. Moreover, Lamarcus's emails that were introduced into evidence establish that he was, as the trial court determined, "threatening and argumentative with CPSU," but Lamarcus would only see his actions as "a misinterpretation of his words."

{¶39} Furthermore, early in this case Lamarcus literally completely abandoned any intention of being reunited with A.G., refusing to even try to have visitation. It was only after Lanayia died that Lamarcus resurfaced, and even then he refused to acknowledge there were any issues with his parenting abilities. He felt that since Lanayia had said in court at one time that the domestic violence did not happen, he should not attend domestic violence courses even though she had stated on numerous other occasions that the domestic violence did occur. Further, Lamarcus had a history of domestic violence, yet he was reluctant to start classes.

{¶40} On the whole, the record supports the trial court's determination that CPSU engaged in reasonable efforts here. "We emphasize that the law does not

require a trial court to consider whether there was anything more CPSU could have done, but whether the case planning was reasonable under the circumstances." *I.C.*, 2023-Ohio-4707, ¶ 61. By contrast, Lamarcus's efforts were minimal, and only late in the proceedings when A.G. had significantly bonded to her caregivers. Based on the evidence in the record, we do not find that the trial court erred. Therefore, Lamarcus's second assignment of error is overruled.

### *Third Assignment of Error*

**{¶41}** In his third assignment of error, Lamarcus argues that the trial court erred by admitting inadmissible hearsay at the final hearing.

### Relevant Authority

**{¶42}** Hearsay is inadmissible in permanent custody hearings. Juv.R. 34(I). However, where other admissible evidence that mirrors the improper hearsay is admitted, the hearsay is deemed harmless since it would not change the outcome of the proceeding. *In re P.C.*, 3d Dist. No. 8-20-39, 2021-Ohio-1238, 171 N.E.3d 808, ¶ 68. Moreover, the admission of hearsay evidence in permanent custody cases, even if error, is not considered prejudicial unless it is shown that the juvenile court relied on this improper evidence in making its decision. *In re K.B.*, 12th Dist. Butler No CA2014-02-042, 2014-Ohio-3654, ¶ 83.

### Analysis

**{¶43}** At the outset, we emphasize that as factfinder the juvenile court is presumed to consider only properly admissible evidence unless the record affirmatively demonstrates otherwise. *In re A.F.*, 12th Dist. Butler No. CA2011–12–233, 2012–Ohio–2958, ¶ 33. Thus where Lamarcus fails to show that the trial court relied on any purported instances of hearsay in its final judgment such instances are inconsequential for our review on appeal and cannot result in error. *See id.*

**{¶44}** Nevertheless, Lamarcus cites numerous instances of testimony that he believes constituted inadmissible hearsay in his brief. For example, Lamarcus argues that caseworkers were improperly permitted to testify to statements Lanayia had made about the domestic violence in this case. Further, Lamarcus argues that caseworkers were impermissibly permitted to testify about conversations they had with the mothers of Lamarcus's other children, and that caseworkers were impermissibly permitted to testify regarding the Florida home study since no caseworker from Florida testified in this matter.

**{¶45}** Lamarcus's hearsay arguments ignore the numerous exhibits in this case that were introduced into evidence *by stipulation of both parties* that convey the same or similar information that Lamarcus contends is now objectionable under a hearsay standard. This renders the evidence cumulative and, therefore, harmless. *P.C.*, *supra*, at ¶ 68.

{¶46} For example, statements Lanayia made to caseworkers regarding the domestic violence are in multiple exhibits. Statements regarding Lamarcus having a prior criminal history, including domestic violence, are in multiple exhibits. The GAL's report and recommendation contains numerous statements regarding issues Lamarcus argues are now objectionable, such as the fact that Lamarcus has a history of domestic violence with other individuals. The GAL's report also indicates that Lamarcus's home could not be approved by CPSU. We simply do not see any prejudicial statements in this case that were not contained elsewhere, and to the extent any statements are not contained elsewhere, they are either not prejudicial or not relied upon by the trial court in its final entry. As any statements that could be considered prejudicial are cumulative, we find that even if there was any error here, it would be harmless. Therefore, Lamarcus's third assignment of error is overruled.

*Fourth Assignment of Error*

{¶47} In his fourth assignment of error, Lamarcus argues that he received ineffective assistance of counsel due to cumulative errors committed by trial counsel.

Standard of Review

{¶48} "The test for ineffective assistance of counsel used in criminal cases, announced in *Strickland* [*v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)] is equally applicable to actions seeking to force the permanent, involuntary termination of parental custody." *In re Brooks*, 10th Dist. Franklin No.

-20-

04AP-164, 2004-Ohio-337, ¶24. *Strickland* requires that appellant first show counsel's performance was deficient. To meet that requirement, appellant must show the parent's attorney made errors so serious "that counsel was not functioning as the 'counsel' as guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 104 S.Ct. 2052. In addition, appellant must show that counsel's deficient performance prejudiced the parent's case. To meet the second requirement, appellant must show that counsel's errors "were so serious as to deprive [them] of a fair trial, a trial whose result is reliable." *Id.* In effect, appellant must show that there is a "reasonable probability" that, but for counsel's errors, the result of the trial would have been different. *Id.* at 694, 104 S.Ct. 2052.

Analysis

{¶49} In his fourth assignment of error, Lamarcus makes numerous arguments that his trial counsel was ineffective. We will address each argument in turn.

{¶50} First, Lamarcus contends that a motion should have been filed to transfer the case to Florida. As Lamarcus does not, and cannot, establish that such a motion would have been granted, there can be no prejudice, thus there is no ineffective assistance of counsel.

{¶51} Next, Lamarcus argues that trial counsel was ineffective for filing an objection to CPSU's second motion for a six month extension. However, the extension was denied, thus there could be no prejudice. Lamarcus then argues that

trial counsel was ineffective for requesting that the trial court reconsider its decision so Lamarcus could have more time to work the case plan. Lamarcus essentially contends that his trial counsel should have pursued the extension from the outset; however, as trial counsel ultimately pursued the extension, and only requested it to be denied in the first place because Lamarcus wanted the case closed earlier, we can find no prejudicial error here.

{¶52} Finally, Lamarcus argues that his trial counsel was ineffective for failing to object to multiple layers of hearsay throughout the trial. First, to the extent we already determined there was no prejudicial error with regard to numerous pieces of hearsay, this argument is not well-taken. Second, we note that trial counsel did lodge some objections during the trial that were sustained or caused questions to be withdrawn. Third, trial counsel was aware of all the documents that had been entered into evidence and knew what was cumulative and what was not. Further, use of stipulations is a legitimate trial tactic that does not constitute ineffective assistance of counsel. *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶ 345. Fourth, and finally, failure to object alone will not generally be grounds for reversal for ineffective assistance of counsel. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 103.

{¶53} As we have found no prejudicial error here, we find no ineffective assistance of counsel either due to claimed individual errors, or any claimed cumulative errors. Therefore, Lamarcus's fourth assignment of error is overruled.

*Conclusion*

**{¶54}** Having found no error prejudicial to Lamarcus in the particulars assigned and argued, his assignments of error are overruled and the judgment of the Hancock County Common Pleas Court, Juvenile Division is affirmed.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. and MILLER, J.**

**/tmm**